**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DANIEL R. CASTAGNA,                                    Civil Action No.

                Plaintiff,

    v.

WEST MIFFLIN AREA SCHOOL DISTRICT,
DAVID MARSHALL, in his individual and
official capacities, ANTHONY DiCENZO, in his
individual and official capacities, NICHOLAS
ALEXANDROFF, in his individual and official
capacities, DEBBIE KOSTELNIK, in her
individual and official capacities, STEPHEN
KOVAC, in his individual and official capacities
and ERIN O'LEARY WHITE, in her individual
and official capacities,

                Defendants.        JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Daniel R. Castagna, by undersigned counsel, files this Complaint, and in support thereof, avers as follows:

### I. Jurisdiction

1.    This Court has original jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C. §1367(a).

### II. Venue

2.    Venue is proper in the Western District of Pennsylvania, in that all parties are found to be in, and this action arises out of events that occurred in, Allegheny County.

### III. Parties

3.    Plaintiff, Daniel R. Castagna, is an individual who resides in Beaver County,

Pennsylvania.

4.      Defendant, West Mifflin Area School District ("Defendant District"), is a School District organized under the Public School Code of 1949, having its business offices located at 1020 Lebanon Road, Suite 250, West Mifflin, Pennsylvania 15122.

5.      Defendant, David Marshall ("Defendant Marshall"), is an adult individual who resides in Allegheny County, Pennsylvania.  Defendant Marshall has been a member of Defendant District's School Board since December 2017, when he was elected President of the School Board.  He is sued in is official and individual capacities.

6.      Defendant, Anthony DiCenzo ("Defendant DiCenzo"), is an adult individual who resides in Allegheny County, Pennsylvania.  Defendant DiCenzo has been a member of Defendant District's School Board since December 2015, when he was elected Vice President of the School Board.  He is sued in his official and individual capacities.

7.      Defendant, Nicholas Alexandroff ("Defendant Alexandroff"), is an adult individual who resides in Allegheny County, Pennsylvania.  Defendant Alexandroff has been a member of Defendant District's School Board since December 2017 and served a prior 4-year term from December 2010 to December 2013.  He is sued in his official and individual capacities.

8.      Defendant, Debbie Kostelnik ("Defendant Kostelnik"), is an adult individual who resides in Allegheny County, Pennsylvania.  Defendant Kostelnik has been a member of Defendant District's School Board since December 2015.  She is sued in her official and individual capacities.

9.      Defendant, Stephen Kovac ("Defendant Kovac"), is an adult individual who resides in Allegheny County, Pennsylvania.  Defendant Kovac has been a member of

2

Defendant District's School Board since December 2015.  He is sued in his official and individual capacities.

10.     Defendant, Erin O'Leary White ("Defendant White"), is an adult individual who resides in Allegheny County, Pennsylvania.  Defendant White has been a member of Defendant District's School Board since December 2013.  She is sued in her official and individual capacities.

11.     Defendants Marshall, DiCenzo, Alexandroff, Kostelnik, Kovac and White together are referred to as "Defendant School Board Members."

## IV. <u>Facts</u>

12.     At the beginning of the 2007-08 school year, Defendant District hired Plaintiff, Dr. Daniel R. Castagna ("Dr. Castagna"), as Assistant Principal of Defendant District's Middle School.

13.     One year later, Defendant District promoted Dr. Castagna to the position of Principal of Homeville Elementary, one of Defendant District's elementary schools, for the 2008-09 school year.

14.     The next school year, Defendant District promoted Dr. Castagna to the position of Director of Elementary Education for the 2009-10 school year.

15.     Defendant District promoted Dr. Castagna to the position of Assistant Superintendent for the 2010-11 school year.

16.     Defendant District promoted Dr. Castagna to Superintendent a year later, at the start of the 2011-12 school year, and the parties entered into a 5-year employment contract which was set to expire in September 2016.

17.     On September 25, 2015, within a year of the expiration of Dr. Castagna's

3

employment contract, Defendant District renewed his employment contract for an additional 5-year term, a copy of which is attached as Exhibit 1.

18.     Dr. Castagna's employment contract, in part, required Defendant District to make a specified payment into a Tax Sheltered Invest Program, 529 Plan or other Program, to be chosen by the Superintendent each year.

19.     There is no section in Dr. Castagna's employment contract that calls for Defendant District's ability to place Dr. Castagna on a paid or unpaid leave of absence.

20.     Throughout his entire tenure with Defendant District, Dr. Castagna received good performance evaluations and never was reprimanded, disciplined or warned of any performance problems.

21.     During his tenure as Superintendent of Defendant District, Dr. Castagna received the following awards:

   a.     Woody Clark Service Key for Leadership, Research and Service in public education from Phi Delta Kappa, International in December 2011;

   b.     Rated the #1 "Most Clued-In Senior Manager" by the Pittsburgh Post-Gazette in 2012 and 2015; and

   c.     Child Advocacy Award from the Pennsylvania Parent Teachers Association in April 2017.

22.     During his employment with Defendant District, Dr. Castagna engaged in protected conduct when he reported wrongdoing, waste, fraud and/or abuse as follows:

   a.     In mid-2014, Dr. Castagna discovered that one of Defendant District's Assistant Coaches was misusing the policy regarding the use of facilities.  Dr. Castagna told the Assistant Coach that he did not submit the proper permit to charge the parents of the student athletes for the use of one of the athletic fields. Despite the instruction to submit the correct permit, the Assistant Coach failed to submit the proper permit. Dr.

Castagna brought the matter to the Head Coach, who, in turn, used his discretion to terminate the Assistant Coach.  The terminated Assistant Coach was the son of one of Defendant District's then-School Board Members, who attempted to persuade Dr. Castagna to save his son's job and who later voted against renewing Dr. Castagna's employment contract in September 2015.

b.     In late 2014, Dr. Castagna reported to Defendant District and Defendant White that a former administrative employee, who had resigned from employment prior to Dr. Castagna becoming Superintendent, engaged in improper conduct regarding the submission of certain expenses and the recoupment of such expenses.  As a result of Dr. Castagna's investigation into the matter, Defendant District filed suit against the former employee in January 2015.  The above former employee was court-ordered to reimburse Defendant District for his receipt of certain expenses in late 2015.  The above former employee was/is politically aligned with Defendant School Board Members.

c.     In Fall 2015, Dr. Castagna reported to Defendant District and Defendant White that an employee engaged in theft of items from the cafeteria in violation of a directive Dr. Castagna gave to all employees of Defendant District.   Dr. Castagna, with Defendant District's knowledge and approval, conducted a thorough and proper investigation into the alleged theft and after obtaining conclusive proof, recommended to Defendant District and Defendant White that Defendant District terminate the employee.  Defendant District agreed with Dr. Castagna's recommendation and terminated the employee.  The above employee accused of theft was politically aligned with Defendant School Board Members.

d.     In August 2016, Dr. Castagna filed a civil lawsuit against Defendant White for his reasonable, good-faith belief that she engaged in intentional, dishonest and malicious conduct to smear his reputation and interfere with his contractual relationships since she became a Member of Defendant District's School Board in December 2013.

     e.     In April 2017, Dr. Castagna reported to Defendant District, Defendant DiCenzo, Defendant Kostelnik, Defendant Kovac and Defendant White that an administrative employee engaged in theft of a piece of sporting equipment.  Dr. Castagna, with Defendant District's knowledge and approval, conducted a thorough and proper investigation into the alleged theft and after obtaining conclusive proof, recommended to Defendant District, Defendant DiCenzo, Defendant Kostelnik, Defendant Kovac and Defendant White that Defendant District terminate the employee.  The above employee accused of theft was politically aligned with Defendant School Board Members.

     f.     In December 2017, Dr. Castagna contacted the Equal Employment Opportunity Commission (EEOC) *pro se* to complaint about his reasonable, good-faith belief that Defendants were engaging in employment discrimination against him.  In accordance with EEOC procedure, Defendants should have received notice of Dr. Castagna's EEOC complaint within a few days.

     g.     In January 2018, Dr. Castagna made it known to Defendants that he retained counsel regarding Defendants' decision to place him on a paid administrative leave of absence on January 19, 2018; and

     h.     In May 2018, Dr. Castagna, through his counsel, threatened litigation against Defendants for violating his federal and state employment rights.

23.    Defendants disfavored Dr. Castagna because his political affiliations did not align with theirs and made their opposition to him known as follows:

     a.     From in or about 2015 to December 2017, for approximately three years before becoming a Member of Defendant District's School Board, Defendant Marshall posted on social media anti-Castagna messages because of Dr. Castagna's failure to support certain political candidates whom Defendant Marshall favored.

     b.     In early 2016, a member of the Pennsylvania House of

Representatives ("the Representative") approached Dr. Castagna at Dr. Castagna's office and asked Dr. Castagna about his suspected involvement in supporting an individual who was running as a political opponent to the Representative. In June 2016, Dr. Castagna communicated to the Representative that he became aware of the Representative's disparagement of him as Superintendent and he would challenge any accusations by the Representative if he appeared at a School Board meeting. The Representative sent Dr. Castagna a "cease and desist" letter as a result of Dr. Castagna's communication. Defendant Marshall, who had not yet been elected to Defendant District's School Board, is a strong political supporter of the Representative and posted the "cease and desist" letter against Dr. Castagna on his social media site. Defendant School Board Members and the above Representative are strong political allies and strong political opponents against Dr. Castagna because he did not align with their political affiliations.

c.      Defendant Marshall, Defendant Alexandroff and Defendant White jointly communicated on social media their collective disfavor of Dr. Castagna.

24.     Dr. Castagna believes and therefore avers that from in or about June 2016 through in or about Fall 2017, Defendant Marshall and Defendant White posted on social media/community forum ethnic slurs and stereotyping relating to Dr. Castagna's Italian-American heritage.

25.     In the Primary Election in Spring 2017, Defendant Marshall, who ran unsuccessfully twice in the past, ran again for a seat on Defendant District's School Board and won.

26.     In the same Election, Defendant Alexandroff and Defendant White successfully ran for their respective second 4-year terms.

27.     Defendant School Board Members celebrated their political victories together during which time they pledged their desire to "get rid" of Dr. Castagna.

7

28.     Defendant Marshall, Defendant Alexandroff and Defendant White won seats on Defendant District's School Board in the General Election in Fall 2017.

29.     On December 5, 2017, at the annual reorganization meeting, Defendant Marshall, Defendant Alexandroff and Defendant White (along with another new School Board Member) were sworn in as Members of Defendant District's School Board.

30.     At the reorganization meeting, Defendant Marshall was elected President of Defendant District's School Board for the ensuing year and Defendant DiCenzo was elected Vice President.

31.     Defendant School Board Members continued their political support for each other at the reorganization meeting and it was public knowledge that Defendant School Board Members were strong political allies.

32.     Two days after the December 5, 2017 reorganization and regular meetings, Defendant Marshall met with Dr. Castagna and Defendant District's newly hired solicitor, during which time Defendant Marshall pledged to abandon his 3-year history of maligning Dr. Castagna on social media and in the public and to proceed forward in a professional and respectful manner towards Dr. Castagna.  That evening, Defendant Marshall posted his pledge to set aside his personal, political and philosophical differences with Dr. Castagna on his social media page.

33.     Dr. Castagna took a medical leave of absence on January 10, 2018 for two weeks due to a non-work related injury.

34.     On January 19, 2018, while Dr. Castagna while on a medical leave of absence, Defendant School Board Members voted to place Dr. Castagna on a paid administrative leave of absence.

8

35.     Defendants did not provide Dr. Castagna any notice, warning or rationale for placing him on the paid administrative leave of absence.

36.     Dr. Castagna remained on a paid administrative leave of absence until July 2, 2018, when Defendant School Board Members voted to place him on an unpaid administrative leave of absence.

37.     At the July 2, 2018 school board meeting, School Board Member Janice Gladden accused Defendants of the following:

   a.     Defendants had not undertaken a fair and impartial investigation into alleged misconduct of Dr. Castagna;

   b.     Defendants withheld information about the rationale for placing Dr. Castagna on a paid administrative leave of absence for the past six months;

   c.     Defendants' charges of performance problems of Dr. Castagna was not specific and included misstatements of fact;

   d.     Defendants placed Dr. Castagna on an unpaid administrative leave of absence in an act of retaliation; and

   e.     Defendants did not provide sufficient information upon which all School Board Members could make a decision on Dr. Castagna's employment status.

38.     Despite the above concerns raised by School Board Member Gladden, Defendant School Board Members did not change their vote to place Dr. Castagna on an unpaid leave of absence.

**Count I**
**42 U.S.C. §1983 – Political Affiliation**
**Castagna v. All Defendants**

39.     Plaintiff incorporates paragraphs 1 through 38 as though the same had been fully set forth at length herein.

40.     Dr. Castagna, as a citizen of the United States, did not surrender his rights, privileges and immunities under the U.S. Constitution as a condition of employment with Defendant District.

41.     Under the First and Fourteenth Amendment of the U.S. Constitution, Dr. Castagna has a right to choose whether to support political candidates based on his own personal preferences.

42.     Defendants placed Dr. Castagna on an unpaid administrative leave of absence because of his political affiliation in violation of his right to belief and association under the First and Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. §1983.

43.     Dr. Castagna's position of Superintendent does not require a political affiliation similar to the political affiliation of Defendants.

44.     Defendants' actions toward Dr. Castagna were intentional and undertaken with reckless disregard of his federally protected right to not have his employment conditioned on a pledge of political allegiance to a party or candidate he may not prefer to support.

45.     Defendants' conduct as set forth above was a conscious choice on the part of Defendants to disregard Dr. Castagna's constitutional rights, and deprive Dr. Castagna under color of state law of his rights of belief and association under the First Amendment of the U.S. Constitution in violation of 42 U.S.C. §1983.

46.     Defendants' above conduct constitutes misuse of power possessed solely by virtue of state law and made possible only because Defendants are clothed with the authority of state law.

47.     As a direct and proximate result of Defendants' intentional and reckless

10

actions, Dr. Castagna has sustained the injuries and damages including lost wages, employment and emotional distress, humiliation and inconvenience.

WHEREFORE, Dr. Castagna demands judgment against Defendants and damages as follows:

a.   That Defendants be permanently enjoined from discriminating against Dr. Castagna for engaging in First Amendment activities;

b.   That Defendants be permanently enjoined from retaliating against Dr. Castagna because he engaged in First Amendment protected activities;

c.   That Defendants be ordered to reinstate Dr. Castagna to the position he occupied at the time he was terminated;

d.   That Defendants be ordered to pay Dr. Castagna all of his lost pay and benefits;

e.   That Dr. Castagna be awarded against Defendants compensatory damages to compensate for pain, suffering, emotional distress and humiliation he has suffered as a result of Defendants' conduct;

f.   That Dr. Castagna be awarded punitive damages against Defendant Marshall, Defendant DiCenzo, Defendant Alexandroff, Defendant Kostelnik, Defendant Kovac and Defendant White in their respective individual capacities in an amount sufficient to punish that Defendants and to deter similar conduct;

g.   That Dr. Castagna be awarded against Defendants the costs and expenses of this litigation, and, pursuant to 42 U.S.C. §1988, a reasonable attorney's fee; and

h.   That Dr. Castagna be awarded such further relief as this Court deems to be just and proper

**COUNT II**
**42 U.S.C. §1983 - First Amendment Retaliation**
**<u>Castagna v. All Defendants</u>**

48.     Plaintiff incorporates paragraphs 1 through 47 as though the same had been fully set forth at length herein.

49.     In December 2017, Dr. Castagna engaged in Constitutionally-protected conduct when he filed a contacted the EEOC *pro se* and complained of his reasonable, good-faith belief that Defendants were engaging in employment discrimination against him.

50.     In August 2016, Dr. Castagna engaged in Constitutionally-protected conduct when he initiated a lawsuit against Defendant White for defamation and tortious interference with prospective contractual relationships.

51.     Dr. Castagna's legal activity identified above is protected speech under the First Amendment of the U.S. Constitution.

52.     On January 19, 2018, Defendants placed Dr. Castagna on a paid leave of absence from his position as Superintendent.

53.     Soon thereafter, Castagna engaged in protected activity when he retained counsel and threatened litigation against Defendants for violations of his federal and state employment rights.

54.     On July 2, 2018, Defendants placed Dr. Castagna on an unpaid leave of absence from his position as Superintendent.

55.     Dr. Castagna exercised his right of free speech when he became involved in the legal process of filing a charge of discrimination *pro se* with the Equal Employment Opportunity Commission, filed a lawsuit in state court against Defendant White and retained counsel with the threat of litigation.

56.     Defendants retaliated against Dr. Castagna because he exercised his right

of speech under the First Amendment when Defendants acted unlawfully, under color of state law, to deprive Dr. Castagna of his employment and to adversely alter his working conditions in retaliation for his exercise of his right of free speech.

57.     Defendants were acting under color of law, and their decision to place Dr. Castagna on a paid administrative leave of absence and a subsequent unpaid leave of absence in deprivation of his rights in violation of 42 U.S.C. § 1983 and the First Amendment and Fourteenth Amendments of the United States Constitution.

58.     Defendants' actions are the type of activity that would keep a person of ordinary firmness from exercising his First Amendment rights.

59.     Defendants knew that placing Dr. Castagna on a paid leave of absence and a subsequent unpaid leave of absence violated his Constitutional rights.

60.     Defendants' conduct above constitutes misuse of power possessed solely by virtue of state law and made possible only because Defendants are clothed with the authority of state law.

WHEREFORE, Dr. Castagna demands judgment against Defendants and damages as follows:

     a.    That Defendants be permanently enjoined from discriminating against Dr. Castagna for engaging in First Amendment activities;

     b.    That Defendants be permanently enjoined from retaliating against Dr. Castagna because he engaged in First Amendment protected activities;

     c.    That Defendants be ordered to reinstate Dr. Castagna to the position he occupied at the time he was terminated;

     d.    That Defendants be ordered to pay Dr. Castagna all of his lost pay and benefits;

e.     That Dr. Castagna be awarded against Defendants compensatory damages to compensate for pain, suffering, emotional distress and humiliation he has suffered as a result of Defendants' conduct;

f.     That Dr. Castagna be awarded punitive damages against Defendant Marshall, Defendant DiCenzo, Defendant Alexandroff, Defendant Kostelnik, Defendant Kovac and Defendant White in their respective individual capacities in an amount sufficient to punish that Defendants and to deter similar conduct;

g.     That Dr. Castagna be awarded against Defendants the costs and expenses of this litigation, and, pursuant to 42 U.S.C. §1988, a reasonable attorney's fee; and

h.     That Dr. Castagna be awarded such further relief as this Court deems to be just and proper

**COUNT III**
**43 P.S. §1423**
**Pennsylvania Whistleblower Law**
**Castagna v. Defendant District**

61.     Plaintiff incorporates paragraphs 1 through 60 as though the same had been fully set forth at length herein.

62.     Dr. Castagna engaged in protected conduct by reporting wrongdoing, waste, fraud and/or abuse by four employees of Defendant District to Defendants.

63.     Defendants placed Dr. Castagna on a paid leave of absence on January 19, 2018 and a subsequent unpaid leave of absence on July 2, 2018 following his good faith reports of wrongdoing.

64.     Dr. Castagna's reporting of theft by two employees was a substantial or motivating factor in Defendants' decision to place him on a paid leave of absence and a subsequent unpaid leave of absence.

65.     Defendants placed Dr. Castagna on a paid leave of absence and a

subsequent unpaid leave of absence in violation of the Pennsylvania Whistleblower Law, 43 P.S. §1421 *et seq.*

WHEREFORE, Dr. Castagna demands judgment against Defendant District and damages as follows:

      a.    That Defendant be ordered to reinstate Dr. Castagna to the position of Superintendent;

      b.    That Dr. Castagna be awarded appropriate back pay and reimbursement for additional lost benefits in an amount to be shown at trial, with prejudgment interest to the maximum extent permitted by law;

      c.    That Dr. Castagna be awarded all employment rights absent such discrimination; and

      d.    That Dr. Castagna be awarded a reasonable attorney's fee and costs associated with this litigation.

## COUNT IV
## Breach of Contract
## Castagna v. Defendant District

66.    Plaintiff incorporates paragraphs 1 through 65 as though the same had been fully set forth at length herein.

67.    Defendant District and Dr. Castagna entered into an employment agreement, attached as Exhibit 1, which constitutes an enforceable contract under the laws of Pennsylvania.

68.    Section 6.12 of Dr. Castagna's employment contract requires Defendant District to make a specified payment into a Tax Sheltered Invest Program, 529 Plan or other Program, to be chosen by the Superintendent

69.    Defendant District failed to make the specified payment into Dr. Castagna's designated Plan or Program at the conclusion of the 2017-18 school year, despite its

obligation to do so.

70.    There is no section in Dr. Castagna's employment contract that calls for Defendant District's ability to place Dr. Castagna on a paid or unpaid leave of absence.

71.    Defendant District placed Dr. Castagna on a paid administrative leave of absence and a subsequent unpaid leave of absence, despite there being no authority to do so under the terms of Dr. Castagna's employment contract.

35.    Defendant District's failure to comply with the above terms of this contract constitutes a material breach.

WHEREFORE, Dr. Castagna demands judgment against Defendants and damages as follows:

a.    That Defendants be permanently enjoined from discriminating against Dr. Castagna for engaging in First Amendment activities;

b.    That Defendants be permanently enjoined from retaliating against Dr. Castagna because he engaged in First Amendment protected activities;

c.    That Defendants be ordered to reinstate Dr. Castagna to the position he occupied at the time he was terminated;

d.    That Plaintiff be awarded appropriate back pay and reimbursement for additional lost benefits in an amount to be shown at trial, with prejudgment interest to the maximum extent permitted by law.

Respectfully submitted:

*s/ Colleen Ramage Johnston*
Colleen Ramage Johnston
PA I.D. No. 64413

Nikki Velisaris Lykos
PA I.D. No. 204813

Johnston Lykos, LLC
525 William Penn Place
28th Floor
Pittsburgh, PA  15219
(412) 325-7700 – phone
(412) 325-7755 – fax

Attorneys for Plaintiff