## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL R. CASTAGNA,

        Plaintiff,

        v.

WEST MIFFLIN AREA SCHOOL
DISTRICT, et al,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:18-cv-00894

Magistrate Judge Lisa Pupo Lenihan

ECF No. 129

## MEMORANDUM OPINION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.  SUMMATION

Currently before the Court is the Motion for Summary Judgment filed by
remaining Defendant, West Mifflin Area School District ("Defendant" or "District").
ECF No. 129.   Plaintiff's Fourth Amended Complaint, ECF No. 104, was filed on
September 10, 2019 and asserted the following counts against Defendant, his former
employer: under 42 U.S.C. §1983, for violation of his First Amendment rights of political
affiliation and free speech; violation of the Pennsylvania Whistleblower Law ("PWL"),
43 P.S. §1423; breach of contract; and violation of the Pennsylvania Wage Payment and
Collection Law (the "PWPCL").  Plaintiff, however, subsequently withdrew his separate
PWPCL claim and incorporated his claim for nonpayment of his final bi-weekly wages

into his breach of contract claim.  *Cf.* ECF No. 130 at n. 1 (citing ECF No. 126).

Defendant seeks summary judgment in its favor on all counts.

 For the reasons set forth below, the Court finds that reasonable fact finders could clearly differ in their conclusions as to factual matters material to assessment of Defendant's liability under Plaintiff's causes of action set forth in Counts I, III and IV of the Fourth Amended Complaint, and as Count II presents a close Constitutional question inappropriate for determination on a pre-trial, abbreviated record, Defendant's Motion for Summary Judgment, ECF No. 129, will be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This action arises between Defendant West Mifflin Area School District ("Defendant" or the "District") and Daniel R. Castagna ("Plaintiff").  The Individual Defendants in this action - dismissed earlier this year following the parties' settlement, Stipulation and subsequent Motion, *see* ECF No. 130 at n. 3; ECF No. 144 - were the following members of Defendant's School Board (the "Board"): David Marshall ("Marshall") who was elected to the Board and its Presidency in 2017, Anthony DiCenzo ("DiCenzo") who was elected in 2015, Nicholas Alexandroff ("Alexandroff") who served on the Board 2010-13 and was re-elected in 2017, Debbie Kostelnik ("Kostelnik") and Stephen Kovac ("Kovac") who were both elected in 2015, and Erin O'Leary White ("White") who was elected in 2013 and 2017.

Viewing the record in the light appropriate on motion for summary judgment:

Plaintiff was employed by Defendant beginning in 2007 and, following a series of promotions, ultimately assumed the position of Superintendent in 2011.  His five-year contract was renewed in September 2015, for a term from September 2016 through September 2021.  ECF No. 104, Ex. 1.  That contract sets forth provisions for both Plaintiff's salary and annual retirement fund contributions.  *Id.*  Plaintiff held the position of Superintendent until his 2018 suspension and subsequent termination in March, 2019.

Beginning in mid 2014 and into early 2017, Plaintiff, acting in his position as Superintendent, became aware of and identified to Defendant incidents of School District employee misconduct (including misuse of a school athletic facility for personal profit, failure to reimburse a tuition payment, petty theft from a school cafeteria, and use of school funds for a personal purchase).[1]  Plaintiff's reports and related inquiries resulted in litigation and sanctions, including termination of two employees.  Some Individual Defendant Board members - including Marshall, Alex and White –expressed

---

[1] More particularly, in 2014, Plaintiff reported that non-students were being allowed access to District baseball facilities for batting practice on payment to athletic staff (employee Jeff Rubinsak) and that an employee (Phil Martell) failed to repay an approximately $5,000 tuition reimbursement in accordance with a contract requiring repayment if he left employment in less than five years.  In 2015, he reported a security employee (Mark Hart) who took merchandise from a school cafeteria without payment. And in 2017, he reported an employee (Scott Stephenson) for charging a $250 baseball bat ordered for his own use to the school's account. ECF No. 104 at 4-6; ECF No. 131 at 24-28

3

to others their displeasure with Plaintiff's reportings for personal reasons and/or their friendships/affiliations with the employees adversely affected.

In early 2016, Plaintiff and some members of the School Board favored competing candidates in the election for Pennsylvania House Representative (for which the primary was held in April and the general election in November). In particular, Marshall, Alexandroff, and White each actively supported the re-election of Democratic party candidate, Representative William Kortz ("Kortz") while Plaintiff supported his political opponent, Republican party candidate, Rod Salka ("Salka"). During the campaign months, prior to Kortz's November political victory, Plaintiff and Kortz had verbal and written exchanges regarding the former's support of Salka and Kortz' public objections and related remarks.[2] Defendants Marshall, Alexandroff and White communicated to others their disapproval of Plaintiff and of his political beliefs/conduct. In March, 2016, Plaintiff filed a civil suit against White by Writ of Summons, and in August filed a Complaint alleging defamation and interference with contract from which he sought injunctive relief. The action was later voluntarily withdrawn.

---

[2] In one exchange, a text message from Plaintiff to Kortz on June 7, 2016, Plaintiff pointed to their political differences regarding both State and School Board politics, stating: "I support Rod Salka.  U support Dave Marshall. End of story." ECF No. 131 at ¶54, *id.* at Ex. W.

*Cf.*, e.g., ECF No. 148 (Defendant's assertion that Plaintiff contended animus between the individual parties relating solely to state – and not Board – political alliances/support).  As discussed, *infra*, Defendant has contended that Count I of the Complaint did not encompass Board politics.

4

Plaintiff did not provide his political support to Marshall, Alexandroff or White during their candidacies for 2017 election to the Board.  All three candidates were politically aligned with and supported in their Board candidacies by Kortz, and were successful in the Spring 2017 primary election and the Fall 2017 general election.  ECF No. 104; ECF No. 131 at ¶¶ 59-61.[3]  In late September, 2017, Plaintiff was arrested for Driving Under the Influence, an offense for which he had also been arrested in 2009.  Plaintiff notified the Board of his arrest in writing and in person within the week; he did not then include reference to his previous DUI and Defendant's pleadings do not identify any employment contract obligation to do so.  In October of that year, Plaintiff received several items of correspondence from a "girlfriend" of Kortz, Barbara Felicetty, divulging a conspiracy among Kortz and allied Board members to effect termination of his employment in political retaliation.[4]  That same month, Plaintiff forwarded

---

[3] Although his term on the School Board was not up for reelection in 2017, evidence of record is supportive of Plaintiff's assertion of a relationship/alliance between a fourth Board member, DiCenzo, and other Individual Defendants allegedly retaliating against Plaintiff.  ECF No. 142.

[4] *See also*, *e.g.*, ECF No. 131 at ¶66; *id.* at Ex. Z (discussing Marshall's June, 2016 through November 2017 statements regarding Kortz and Plaintiff, and quoting Marshall's social media statements that "Kortz want[s] blood" and "I'm running for school board.  Kortz is backing me and he is looking for people to take out Castagna.  If you know anyone let me know."); *id.* at ¶¶74-83 (discussing Alexandroff, Marshall and White's mutual political support, and political Board campaign statements by Alexandroff, including "Boots on the ground.  Me and Dave."); *id.* at ¶¶163-180 (discussing White's multiple October, 2016 to May, 2018 statements regarding Plaintiff's termination and her intent to impede his ability to obtain subsequent employment, including two in late October, 2017 indicating that she wanted Plaintiff gone).  *Cf.* ECF No. 13 at 8 (asserting that "aside from" the social media of Marshall, Plaintiff has no evidence to support his claim

Felicetty's statement to the School Board requesting that it take some action. He also filed an employment discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race and age discrimination and retaliation,  citing Kortz' conduct, alleged resultant damage to Plaintiff's reputation, and interference with his employment.   The EEOC Investigator fairly noted in reply that Plaintiff had neither alleged nor suffered any harm by Defendant, and that the matter of his complaint appeared to be Kortz' alleged politically-motivated harassment.  ECF No. 131 at ¶¶131-35.[5]  Shortly thereafter, on December 5, 2017, the three above-named Individual Defendants were seated in their elected Board positions and Marshall was elected President.

On January 10, 2018, Plaintiff began a two-week medical leave for a fractured back.  The recently-elected Board met in executive session on January 18th, at which time Defendant asserts the Board was informed by Marshall that Plaintiff had ostensibly made the untruthful representation to him that the recent DUI was Plaintiff's first such offense.  ECF No. 131 at ¶¶ 30-31.  Plaintiff received notice on January 19th that he had been suspended with pay. Plaintiff's counsel corresponded with Defendant's solicitor requesting communication regarding the suspension.[6]

---

of causation).  As Plaintiff evidences, social media posts/texts by Marshall, Alexandroff and White include indicia of political alliance

[5] The EEOC Complaint was subsequently dismissed.

[6] Between January and July, 2018, Plaintiff's counsel sent Defendant's counsel seven letters, and asserted violations of his employment rights and legal liability therefore.

Defendant's Solicitor conducted an open-ended investigation of "additional allegations of misconduct by Plaintiff."  ECF No. 130 at 3-4.  Plaintiff was provided notice of a Loudermill Hearing and allegations of misconduct on June 26, 2018, and on July 2, 2018, Plaintiff was suspended without pay. Another Board member, Janice Gladden, spoke in objection at that meeting.[7]  Plaintiff asserts that Defendant did not pay Plaintiff his full salary for the 2017-2018 school year nor did Defendant make Plaintiff's 2018 contractually-required $7,500 retirement payment. *See* discussion *infra*.

In accordance with the Pennsylvania Public School Code statutory procedures for Plaintiff's termination as School District Supervisor, Defendant thereafter held a public Section 1080 disciplinary hearing over multiple evenings between late August and late November, 2018.  On March 13, 2019 Plaintiff was terminated by a vote of six to three, which adopted the Adjudication Findings of Facts and Conclusions of Law of the Hearing Officer, with each of the initially named Individual Defendants - including Marshall, Alexandroff, White and DiCenzo - voting in favor of termination.  Plaintiff did not appeal that adjudication in State court.[8]

---

[7] Gladden asserted, *e.g.*, that Plaintiff had not been afforded a fair and impartial investigation, the charges against him contained factual misstatements, the investigation information provided was insufficient to support an informed employment vote, and the Board's actions were retaliatory.

[8] Defendant asserts that Plaintiff is therefore bound by the findings of fact in the adjudication and they are binding for purposes of Plaintiff's assertion that charges on which he was terminated were pretextual.  ECF No. 130 at 4.  The Court disagees.  *See* discussion *infra*.

The parties are familiar with the extensive procedural history of the case *sub judice*.  Most recently, the Court denied the majority of Defendant's Motion to Strike and granted Plaintiff leave to amend and supplement his filings to address the few sustainable objections.  ECF No. 159.  To the extent arguments made in Defendant's Brief in Support of its Motion for Summary Judgment, EFC No. 130, were also made in Defendant's Brief in Support of its Motion to Strike, ECF No. 148, and addressed in the Court's May 20, 2020 Opinion and Order, ECF No. 159, the Court directs the parties to said Opinion and Order.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the pleadings, documents, electronically stored information, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (a) & (c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof.  *Id*.  Once that burden has been met, the non-moving party must set forth

"specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court).  An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . .  [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

## IV.  ANALYSIS

### A.  Section 1983 – Violation of First Amendment Rights of Political Affiliation

Plaintiff alleges that Defendant's adverse employment actions were taken under color of law, intentionally, with reckless disregard for his Constitutional rights, and in retaliation for his political beliefs and affiliation.  ECF No. 104 at 10-11.  A review of the record makes it clear that the parties' dispute regarding the relation between Defendant's adverse actions and Plaintiff's political action or inaction entails material fact questions which must be addressed at trial.  Indeed, Plaintiff presents significant evidence of numerous material fact questions in support of this claim. *See, e.g.*, ECF No. 142 and Exhibits thereto.

To establish a claim under § 1983, a plaintiff must show that the conduct complained of was committed by persons acting under color of state law and violated a right, privilege, or immunity secured by the Constitution or laws of the United States. Defendant does not dispute that it is a person for purposes of liability under § 1983.[9] To establish a claim for political affiliation retaliation, Plaintiff must show that he (1) was employed at a public agency in a position that does not require a political affiliation; (2) was engaged in constitutionally protected conduct; and (3) this conduct was a substantial or motivating factor in the District's employment decision. *Moffit v. Tunkhannock Area Sch. Dist.*, 160 F. Supp. 2d 786, 799 (M.D. Pa. Feb. 3, 2016) (quoting *Galli v. New Jersey Meadowland's Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007)).

Defendant does not dispute that Plaintiff has met the first of these elements,[10] nor does it dispute the second, other than to assert that Plaintiff's claim properly encompassed only his political conduct as to the 2016 State election and not his political decision to withhold his support of candidates in the 2017 Board elections. The Court rejects both aspects of that assertion: the scope of the claim originally maintained and

---

[9] See ECF No. 130 at 12. ("A municipality or government entity is a person for purposes of §1983." *Ditzler v. Hous. Auth.*, 171 F.Supp.3d 363, 367 (W.D.Pa.2016)).

Although Defendant goes on to note that municipal liability does not attach under *respondeat superior*, the Court finds no such theory of liability necessary to the claims in which Plaintiff has identified questions of material fact. *Cf. id.* ("Section 1983, however, does not allow municipal liability under a theory of respondent superior.").

[10] Defendant does not assert that political affiliation was an appropriate requirement of Plaintiff's position. *Cf.* Plaintiff's Brief in Opposition, ECF No. 141 at 1.

legally permissible.  As to the former, *see* ECF No. 149 and *supra*; as to the latter, *see, e.g.,* ECF No. 141 at 4-5, with which the Court concurs.[11]  Defendant's reiterated assertions to the contrary notwithstanding, Plaintiff's claim includes, and by law clearly may include, an assertion of Defendant's legal liability for adverse employment action for reasons of his political support *and non-support* of candidates in State and School Board elections. *See* ECF No. 129.[12]

As Defendant notes, evidence of knowledge and of causation are necessary to Plaintiff's claim.  ECF No. 130 at 13.  *See also* ECF No. 141 at 3 ("Proving a 'substantial factor' . . . requires proof of both the District's knowledge of [Plaintiff's] political conduct and a causal connection between his conduct and the adverse actions at issue . . . .") (providing case citations).

In refuting evidence of its knowledge, however, Defendant takes an unsupportable and  crabbed view of what constitutes "evidence" toward material fact

[11] "Castagna's conduct of not supporting various . . . candidates is likewise protected." ECF No. 141 at 4 (providing case citations).  *Compare* ECF No. 149 at 3-4, 6 & n.1 (positing that Plaintiff is required to evidence his actual support of other Board candidates and, conversely, that merely withholding political support/participation is not protected).  The Court further observes Defendant's citation to *Palfrey v. Jefferson-Morgan Sch., Dist.*, CIV.A. 06-01372, 2008 WL 4412230, at *10 (W.D. Pa. Sept. 25, 2008) to be inapposite.  *See* ECF No. 149 at 6; *Palfrey* at *57-59 (holding Board member's "perception of plaintiff's involvement" with political act was insufficient to demonstrate protected activity where plaintiff herself had not alleged that conduct or First Amendment protection in her own complaint).

[12] *Cf. also e.g.,* ECF No. 142, App. Ex. 47 (Plaintiff's counsel letter to Defendant's solicitor, dated June 21, 2018, noting in context of potential Section 1983 action based on political affiliation, that Board members expressed a clear intent to retaliate against Plaintiff for his refusal to support candidates ).

questions.  *Compare, e.g.*, ECF No. 130 at 15 (asserting as established with no room for
reasonable difference (arising as part of, *e.g.*, credibility determinations or reasonable
inferences from the totality of the factual record) that no Board member was aware of
Marshall's alleged political motivations or knew (with the "arguabl[e]" exception of
Marshall) of Plaintiff's support for Salka)[13] *with* ECF No. 141 at 3-6; ECF No. 142 and
Exhibits thereto.  Plaintiff has evidenced significantly more than a "vague aura of
politically [*sic*] motivat[ion]".  ECF No. 130 at 16.

Relatedly, the Court rejects Defendant's repeated attempts to negate evident
questions of material fact by unilaterally asserting, *e.g.*, that Board members were
unaware of Plaintiff's or each other's conduct (when such questions are within the
credibility and reasonable inference determinations delegated to the finders of fact) and
that a Board member's only relevant conduct is that occurring during his term on the
Board (when such state-of-mind evidence as an Individual Defendant's prior written
communications expressing political antagonisms or animus toward Plaintiff is relevant
to this litigation).  *See, e.g.*, ECF No. 130 at 8, 18.  The Court also rejects Defendant's
attempts to advance an argument that Plaintiff is required to establish that *each of the
other five (5)* Board members voting in favor of his termination were aware of Marshall's
improper motivation (ECF No. 130 at 16) and that each of them voted in favor of

---

[13] Defendant emphasizes that "[t]ellingly, even the Board members who *opposed*"
adverse action testified they were without knowledge of Marshall's private discussions
or alleged motive." *Id.*  The Court would not be surprised - or find particular
evidentiary relevance - if Board members not alleged to have been part of a
faction/alliance of members with shared political animus were not apprised of the
discussions or collaborations of those allied.

termination with a substantial or motivating factor being Plaintiff's protected conduct (*id.* at 31).  Indeed, not even Defendant appears committed to this assertion.  *Compare id.* at 30 ("Plaintiff must show that two (2) or more Board members retaliated against him on the basis of his political affiliation or his speech."). The Court concurs that, as to Counts I and II of his Complaint, Plaintiff must provide evidence that his Constitutionally-protected right of political affiliation or speech, respectively, was a substantial or motivating factor in *two* or more of the votes in favor of his termination.[14]

Causation requires evidence of either (a) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (b) a pattern of antagonism coupled with timing to establish a causal link.  ECF No. 130 at 14 (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997).[15]  In refuting causation, Defendant asserts that "the Board did not take action against Plaintiff until

---

[14] Although Defendant quotes *Holt Cargo Sys., Inc. v. Delaware River Port Authority*, 20 F. Supp.2d at 840-41 (E.D. Pa. 1998) ("plaintiffs must be able to show that a majority of the board knew of the improper motive and ratified it"), in support, the Court does not find this language of this 23-year-old case persuasive in the case *sub judice*.  Under its highly-distinguishable facts, the *Holt* plaintiffs evidenced improper motivation on the part of only 2 of 16 board members, and the policy decision at issue required a vote of 10. Plaintiff has provided evidence of political motivation on the part of at least three, and perhaps four, of nine Board members with a vote of five required.  *Cf.* ECF No. 130 at 17.

[15] Defendant appears to take inconsistent positions in an attempt to distance its alleged adverse employment actions from Plaintiff's conduct.  *Compare* ECF No. 130 at 13, n. 4 ("The District contends [in reliance on the alleged applicability of Title VII case law] that Plaintiff's suspension with pay . . . is not an adverse employment action.") *with id.* at 18 (stating that "the first 'adverse employment action' taken against [Plaintiff was] in January 2018").

more than two years after his political activity." ECF No. 130 at 17-18. As Plaintiff

cogently outlines, the evidence as a whole raises material fact questions in support of a

finding that Board members acting from improper motive and in alliance took

retaliatory actions against Plaintiff shortly after it was within their power to do so,

including actions progressing toward and concluding with his termination. ECF No.

141 at 7-9. Moreover, the evidence includes that of ongoing animosity toward Plaintiff

on the part of allegedly allied Board members between the November 2016 State

election and at least the end of 2017. See ECF No. 130 at 18 (*quoting Falnders v. Dzugan*,

156 F.Supp.3d 648, 673 (W.D. Pa. 2016) ("To establish causation under an antagonism

theory, a plaintiff must show actual antagonistic conduct or animus in the intervening

period between the protected activity and the retaliation.")).[16] The record supporting

---

[16] At this point in its Brief in Support, Defendant cites to Alexandroff's "post[] to a
Political Watchdog page . . . that 'We will run this School District again'" as insufficient
to establish causation or retaliation for political conduct. ECF No. 130 at 18.
Throughout its pleadings, however, Defendant repeatedly presents the insufficiencies
of isolated facts in support and asserts that "allegations" and facts as to individual
Board members should only be considered separately. This is not a maintainable
position. *Cf. id.* (asserting that "no evidence of antagonism [exists] toward Plaintiff by
the **Board** in the intervening period") (emphasis in original) ECF No. 149 at 16-17. *Cf.
also id.* at 18-19 (asserting that "social media comments, public or private criticisms, or
disagreements . . . , made by individuals that pre-date their time on the Board, are
insufficient"); *id.* at 24-25 (acknowledging, *e.g.*, "evidence of antagonism related to
[Plaintiff's] lawsuit against White" in "Marshall and White's social media activity" but
dismissing "the activity of" either as insufficient). Defendant's assertion that "Plaintiff
must rely upon rank speculation and pure conjecture to show that because certain
Board members: knew each other; supported each other; somehow knew or were
supported by Kortz; and criticized Plaintiff, his decisions, or the District's 'leadership,'
they took employment action against Plaintiff" flies in the face of a reasonable reading
of the record. ECF No. 130 at 19. *Compare* ECF No. 141 at 9-13 (detailing factual
allegations of antagomism/animus).

causation is thus sufficient to survive Defendant's Motion for Summary Judgment as a record either (a) suggestive temporal proximity (of the ability to effect adverse action and undertaking it) or (b) evidencing a pattern of antagonism coupled with timing.

**B.  Section 1983 – Violation of First Amendment Rights of Protected Speech**

The First Amendment to the United States Constitution safeguards the right to free speech, and the provisions of the First Amendment bind state actors by way of incorporation through the Due Process Clause of the Fourteenth Amendment. *See Locke v. Davey*, 540 U.S. 712, 718, 124 S.Ct. 1307, 158 L.Ed.2d 1 (2004).

Plaintiff alleges that Defendant's adverse employment actions were taken in retaliation for his exercise of his right of protected speech – his right to speak on matters of public concern, as protected by the First Amendment - in (a) filing litigation against White for defamation and contractual interference, (b) filing an EEOC complaint of employment discrimination, and (c) retaining counsel and threatening litigation against Defendant. ECF No. 104 at 12-13.

As discussed above, to succeed on a claim of retaliation for exercising First Amendment rights, a plaintiff must establish that he engaged in protected activity and that the activity was a substantial or motivating factor in any retaliatory action taken against him.  *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir.2002) (citing *Bd. of County Comm'rs. v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996)). The burden then shifts to Defendant, who "may defeat the [P]laintiff's case by showing

that [it] would have taken the same action even in the absence of the protected conduct." *Id.; see also Hill v. City of Scranton*, 411 F.3d 118, 127 (3d Cir.2005).  Defendant contends that Plaintiff's speech was neither on a matter of public concern nor a substantial factor in its adverse employment decisions.  ECF No. 130 at 19.

To deserve First Amendment protection, Plaintiff's must speak as a citizen and "address a matter of public concern".  *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (U.S. 2011).  His speech must also "not be outweighed by any injury such speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs . . . ."  ECF No. 130 at 20.  "An employee's speech addresses a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community."  *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1966).  And there are two steps to the inquiry: (1) identification of the statement as implicating a matter of public concern, and (2) review of the statement's "content, form and context".  *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

As Defendant states: "If speech addresses a matter of personal concern, the Court must find that it concerns something more than a 'multi-faceted personal gripe'."  ECF No. 130 at 20 (quoting *Miller v. Clinton City*, 544 F.3d 5422, 550-51 (3d Cir. 2008).  A "mundane employment grievance" or speech relating *only* to personal interest "does not make the cut."  *Id.* at 21.  *See also* ECF No. 149 at 7, n. 3 (distinguishing, with case quotations, between speaking on a matter of public concern or "upon matters only of personal interest").  Defendant asserts that Plaintiff's allegations and remedies sought

16

"belie any argument that his speech addressed matters of public concern" and that

"[a]ny public concerns Plaintiff raised are peripheral and negligible at best, and clearly

collateral to his personal motivation for filing those actions."   It is not clear to this

Court, however, that matters of public concern – such as un-Constitutional retaliation

against a School District Superintendent for disfavored political conduct – were

"peripheral and negligible" to Plaintiff's personal concerns where he alleges political

animus was causal to his personal injury.[17]

On the other hand, it is also not yet clear to the Court that the speech on which

this claim is premised meets the highly-situational "content, form and context"

assessment which constitutes the second part of the inquiry.  For example, as Defendant

notes, Plaintiff must "indicate" an intent "that the public learn of the matter of the

purported misconduct".  ECF No. 130 at 20, n. 5 (quoting *Emigh v. Steffee*, 442 F.3d

---

[17] Defendant also contends that Plaintiff's speech was outweighed by Defendant's
"interest in promoting workplace efficiency and avoiding workplace disruption."  *Id.* at
22-23.  Defendant's case support for this assertion is, however, patently inapposite.
Neither deference to an employer's decision to fire an employee who violated a policy
designed to prevent Board rifts by constraints on public individual/personal criticism,
nor – similarly – cases regarding sanctions of free speech in contravention of (as a "fight
against") a particular valid/legitimate employer policy or interest inform the facts
alleged and adequately evidenced at this juncture in this case.  *Cf. id.*

The Court also rejects Plaintiff's claims of an absence of a material fact question on the
element of requisite timing for the same reasons discussed in Section IV(A) above.  ECF
No. 130 at 24-26.  The record taken in its entirety is sufficient to raise jury questions as to
either "suggestive temporal proximity" or "a pattern of antagonism coupled with
timing" as to each alleged instance of protected speech.  *See generally* ECF No. 141, 142
and Exhibits thereto.

App'x 660, 665 (3d Cir. 2011)).[18]  And Defendant objects that speech which, on the

evidence of record,  appears contemporaneously directed solely to redress of personal

injury cannot now be recharacterized by Plaintiff as speech directed, or also directed, to

redress of matters of public concern.[19]  *But see Swineford v. Snyder County Pa.,* 15 F.3d

1258, 1271 (3d Cir.1994), *quoting Czurlanis v. Albanese,* 721 F.2d 98, 103 (3d Cir.1983)

---

[18] See also ECF No. 141 at 16-18 (Plaintiff's discussion of "public concern" through multiple case citations describing protected speech as, *e.g.*, that which "attempts to bring to light" or "attempts to explose" misconduct).

[19] As to Plaintiff's counsel's correspondence with Defendant's solicitor, Defendant also contends that said letters neither constituted a threat of litigation nor could be sufficient evidence of Defendant's own knowledge.   The Court rejects these assertions under the summary judgment standard.  The letters speak for themselves and were not merely veiled, as Defendant contents.  And the record evidences that at least one letter was shared through distribution to at least two board members.  *See* ECF No. 130 at 8; ECF No. 142 and Exhibits thereto. *See also* ECF No. 141 at 18 & n. 3.  In addition, the record indicates discussion of communication between the parties' counsel with the School Board, *i.e.*, with Defendant's knowledge.  *Id.*  *Compare* ECF No. 30 at 26 ("Plaintiff cannot establish that the District even **knew** that he hired counsel and threated to sue the District . . . .") (emphasis in original); ECF No. 149 at 8 ("Plaintiff points to no evidence that any of the letters were shared with the District's School Board as a whole.").

Although Defendant places great weight on *Ambrose v. Twp. Of Robinson,* 303 F.3d 488, 493 (3d Cir. 2002) - as cited in Palfrey v. Jefferson-Morgan Sch., Dist., CIV.A. 06-01372, 2008 WL 4412230, at *10 (W.D. Pa. Sept. 25, 2008), aff'd, 355 Fed.Appx. 590 (3d Cir. 2009) – it is markedly distinguishable.  In *Ambrose,* the Court declined to attribute a solicitor's knowledge to township commissioners who denied knowledge, where the sole evidence provided as to their knowledge was an affidavit submitted by a police sergeant in support of another officer's employment litigation.  Said affidavit was supplied to the solicitor "within a 371 page document production" less than one month before the commissioners voted to suspend Ambrose.  *Id.*  The Court further recognizes that while the burden to prove knowledge rests with Plaintiff, as a general rule, "when the moving party 'exclusively' controls 'the knowledge of the events or occurrences on which the action is based' an issue of credibility is presented." *Keefer v. Durkos,* Civil Action No. 3:04–187, 2006 WL 2773247, at *14 (W.D. Pa. September 25, 2006)).

(*quoting Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983))

("Because of the nature of their employment, speech by public employees is deemed to

be speech about public concern when it relates to their employment so long as it is not

speech 'upon matters of *only* personal interest' ") (emphasis added); *McHugh v. Bd. of*

*Educ.,* 100 F.Supp.2d 231, 240 (D.Del.2000) (plaintiff's personal interest in making certain

statements did not negate that they related to a matter of public concern);  *Azzaro v.*

*County of Allegheny,* 110 F.3d 968, 978 (3d Cir.1997) (finding that the employee's motive

is not dispositive but is merely one factor to be considered in characterizing his or her

speech). *Bielewicz v. Penn-Trafford Sch. Dist.*, CIV.A. 10-1176, 2011 WL 1486017, at *4

(W.D. Pa. Feb. 9, 2011), *report and recommendation adopted*, CIV.A. 10-1176, 2011 WL

1399839 (W.D. Pa. Apr. 13, 2011) (citing each of the preceding cases in holding that

"viewing the allegations in the complaint in a light most favorable to *Bielewicz* as is

required, it cannot be said at this juncture that her speech falls outside of the First

Amendment's protection.")

     Thus, as explicated above, whether any of Plaintiff's allegedly protected speech

constitutes not only a private assertion of rights but also an invocation of a right of

public concern protected from retaliation is a close Constitutional question – one which

is particularly situational and on which the answer is not clear at this juncture.

Defendant's motion for summary judgment on this Count will therefore be denied

without prejudice, in accordance with the prudential rule that a Court should not

decide close questions of Constitutional interpretation on an abbreviated summary judgment record, but rather at the close of trial.

### C.  Section 1983 – Effect of Prior Adjudication and the "Even If" Defense

First, Defendant correctly notes that even if Plaintiff has sufficiently evidenced each element of a 1983 claim, Defendant "may avoid a finding of liability by proving by a preponderance of evidence that the same employment action would have been taken even in the absence of the protected activity."  ECF No. 130 at 14 (quoting Moffit, 160 F.Supp. 3d at 799).  And that a plaintiff may rebut a defendant's proffer of legitimate reasons by "producing evidence from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions."  ECF No. 30 at 27.

Defendant proceeds to contend, however – without precedential or persuasive support - that, in evaluating Plaintiff's Section 1983 actions, the factual holdings of Defendant School District's adjudication are preclusive.  More specifically, Defendant asserts that "the facts supporting the District's defense that it [acted] for legitimate reasons are conclusive and should be **presumed** legitimate, and not subject to argument" to the contrary.  ECF No. 130 at 28 (emphasis in original).  This Court disagrees.[20]

---

[20] A lengthy footnote on the standards applicable to review of local agency fact findings on appeal to state trial court is inapposite.  ECF No. 130 at 28, n. 7.

Defendant asserts that that because Plaintiff elected not to appeal the Section 1080 adjudication to State Court he is bound by its factual findings and thus precluded from, *e.g.*, asserting in a Federal Court claim for violation of his Constitutional rights that charges/allegations against him in the Board's adjudication were pretextual rather than legitimate.  ECF No. 130 at 28-29 ("Although conclusions of law contained in the Adjudication are not binding, the facts are . . . .") (citing *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993), which held that in Section 1983 cases, *state administrative fact-finding* is entitled to preclusive effect in federal courts when agency ruling remains unreviewed by state courts).  As Plaintiff points out, Defendant is a local and not a state, but a local, agency.  ECF No. 141 at 24-25.[21]  Moreover, and as Plaintiff notes, Defendant's Board is not an entity "akin to the state-created administrative commissions tasked with adjudicating Pennsylvania law" and, unlike state administrative agency proceedings, Defendant's Section 1080 hearing officer was not an administrative law judge.  ECF No. 141 at 25 (providing case citations).[22]

---

[21] *Cf.* ECF No. 149 at 9 (citing *DePolo v. Supervisors of Tredyffrin Twp.*, 835 F.3d  318, 387 (3d Cir. 2016) (holding local zoning hearing board to be state administrative agency acting in judicial capacity) for proposition that "there is no distinction at law between state and local administrative agencies"); ECF No. 158 at 6 (distinguishing *DePolo*, including by noting that zoning board acted as neutral body reviewing a lower decision).

[22] Plaintiff also notes holdings of the Third Circuit and other Circuit Courts indicating that unreviewed decisions of even state administrative agencies, including factual findings, are not entitled to preclusive effect in subsequent discrimination litigation.  ECF No. 141 at 25-27.  *Cf. Univ. of Tennessee v. Elliott*, 478 U.S. 788 (1986) (prior holding that decision of administrative law judge *on the same issue of race discrimination* was preclusive); ECF No. 149 at 10.

The Court therefore rejects Defendant's assertion that E*dmundson* or other of its cited cases preclude consideration of pretext in this action, and it finds no reason in those cases to originate an extension of *Edmundson* to the circumstances herein.

Defendant further contends that, even if preclusive effect is not afforded to its adjudication's facts, it "is able to show that it would have disciplined Plaintiff regardless of his political affiliation or speech." ECF No. 130 at 27, 29. *See also* ECF No. 141 at 29 (citing the applicable "preponderance of the evidence" standard).

As a School District Superintendent, Plaintiff could be terminated, after the Section 1080 hearing, by a majority vote of the Board, and a single vote improperly motivated does not give rise to a First Amendment cause of action where it does not affect the vote's outcome. ECF No. 130 at 29-30 (correctly citing sections of the Pennsylvania Public School Code and relevant decisions of the Court of Appeals for the Third Circuit). *See also id.* at 30 (quoting *Coogan v. Smyers*, 134 F.3d 479 (2d Cir. 1998) ("If a majority of defendants prove that their individual votes against the plaintiff would have been the same . . ., the defendants . . . cannot be held liable . . . because causation is absent . . . .")); *id.* (concluding that, "[t]herefore, Plaintiff must show that two (2) or more Board members retaliated against him . . . .").[23]  As detailed in Plaintiff's Brief in Opposition, there is more than sufficient evidence of record raising material fact

---

[23] In under-acknowledgment of the evidence of material fact questions, Defendant concludes that at best Plaintiff may be able to show that one Board member retaliated against him because of his political affiliation (presumably, Marshall) and one because of his protected speech (presumably, White).  *Id.* at 31.

questions of improper factors/motive in two or more adverse employment action votes against him.  *See* ECF No. 141 at 29-30; ECF No. 142 and Exhibits thereto; discussion *supra*.

Finally, the Court finds that Plaintiff has produced sufficient evidence from which a fact finder could reasonably believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's adverse employment actions, *see* discussion *supra*.  It also rejects Defendant's contention that Plaintiff would be required, in the alternative, to prove that every asserted charge against him was pretextual.  ECF No. 130 at 31-32.  *Compare* ECF No. 141 at 34 (asserting, with citation to the persuasive language of *Fuentes*, 32 F.3d at 764, n.7, and other Third Circuit cases, that "it is not [Plaintiff's] burden to provide evidence directly contradicting each . . . reason offered by" Defendant).  *Cf. id.* at 31 ("To survive a motion for summary judgment . . . [Plaintiff] need only point to record facts of pretext, which simply is evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons.") (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995)); *id.* at 32. [24]

---

[24]  The Court observes that Defendant misstates the legal principles which may be drawn from the cases cited in ECF No. 149 at 11-12.  It also notes that (a) the pleadings of record suggest that one or more Board member's vote on adverse action was motivated/influenced by the number of serious charges brought against Plaintiff and (b) Plaintiff has asserted that the numbers of charges brought/dropped/successfully prosecuted are themselves evidence of the pretextual nature of proceedings/actions taken against him.  *Cf.* ECF No. 149 at 14 (postulating, with citation to cases, that because charges were withdrawn, rather than added, at the Section 1080 hearing, the number of charges is not evidence of retaliatory employment action).  The freedom to

**C.  Violation of the Pennsylvania Whistleblower Law**

The Pennsylvania Whistleblower Law ("PWL"), 43 P.S. §1423(a), provides that an employer may not discharge or otherwise retaliate against an employee because he "makes a good faith report or is about to report . . . to the employer or appropriate authority an instance of wrongdoing or waste." Wrongdoing in turn is defined as "a violation that is not of a merely technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. §1422; *See Golaschevsky v. Dep't of Environmental Protection, 554 Pa. 157, 162, 720 A.2d 757, 759 (1998).* Waste can also be a basis for a whistleblower complaint, and is defined by statute as "conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources," 43 P.S. §1422, and the referent of "substantial" is the accused's conduct rather than the amount of loss. ECF No. 130 at 33-34. To prove a claim under the PWL , a plaintiff must show "concrete or surrounding circumstances . . . connect[ing] the report with the dismissal." *Golaschevsky, supra.*

Plaintiff's Fourth Amended Complaint somewhat ambiguously alleges that he "engaged in protected conduct by reporting wrongdoing, waste, fraud and/or abuse by

---

amend charges without affecting the legitimacy of a proceeding (as reflected in the cases cited) is unrelated to Plaintiff's assertion that an extensive enumeration of charges of varying degrees of merit may provide further indicia of improper motivation for adverse employment actions.

four employees" of the District, that his "reporting of theft by two employees was a substantial or motivating factor in Defendants' decision(s)" to place him on paid and unpaid leaves of absence, and that this conduct and termination of his employment in March, 2019 were in violation of the PWL.  Plaintiff did not identify which two of the four reports of employee misconduct he refers to.  ECF No. 104 at ¶¶ 67-71.

In its Brief in Support, Defendant asserts that Plaintiff's report of Rubinsak's violation of Defendant's "Use of Facilities" policy and Hart's violation of Plaintiff's directive regarding payment for cafeteria items do not fall within "wrongdoing" under the PWL as neither involved violation of a specific statute, regulation, ordinance or code of conduct or ethics.  ECF No. 30 at 34.  Defendant fails to further identify why Plaintiff's report of Martell's failure to repay a tuition reimbursement, as required by his contract, did not fall within the PWL's definition of "wrongdoing", and asserts that Plaintiff's reporting of  Stephenson's charge to Defendant's account of his purchase of a baseball bat for personal use "fail[ed] to identify the nature of Stephenson's alleged violation."  ECF No. 130 at 34-35.  It also contends that no reporting fell with the PWL's definition of "waste" because each incident was isolated or rare and all were "*de minimus* in nature, underserving of protection under the PWL."  *Id.* at 35.  Defendant simply does not, however, provide sufficient law (as by, *e.g.*, citation to holdings definitively speaking to the fact-specific assessments *sub judice* or to analogous cases) to

support these assertions on summary judgment on the present record. *Cf.* [ECF No. 130 at 33-34](#).[25]

Defendant also contends that Plaintiff cannot establish causation because his reports of misconduct are too attenuated and he points to insufficient surrounding circumstances (because, *e.g.*, "individuals who voted adversely to Plaintiff were not even members of the Board at [the time of his reportings]"). *Id.* at 35. Defendant's similar objections as to temporality and assertions of irrelevance of evidence of Individual Defendants' conduct and state of mind beyond their periods on the Board have been addressed *supra*. *See also* [ECF No. 141 at 52](#); [ECF No. 142](#) and Exhibits thereto.

### D. Breach of Contract

Finally, Plaintiff alleges that Defendant failed to make the contractually required annual payment to his designated retirement program(s) for 2017-18 or 2018-19 and lacked contractual authority to place him on paid and unpaid leaves of absence. [ECF No. 104 at 16-18](#) (citing Employment Contract Section 6.12, *see* Ex. 1).[26] Plaintiff also

---

[25] Plaintiff's Brief in Opposition makes expanded allegations – asserting that Plaintiff's civil litigation against White and his filing of an EEOC complaint were also within the PWL; setting aside any questions as to proper expansion of the claims of Count III in this manner, this Court need not rely on the expanded allegations to deny summary judgment on this Count. [ECF No. 141 at 49-52](#).

[26] Defendant's argument against Plaintiff's claim that it lacked authority to place him on leaves of absence, [ECF No. 130 at 37-38](#), is unrefuted in Plaintiff's Brief in Opposition. [ECF No. 141 at 53-54](#).

alleges that Defendant failed to pay Plaintiff in full for the final bi-weekly pay period of the 2017-18 school year.

Defendant does not appear to dispute that it was contractually required to make an annual retirement contribution of $7,500 for applicable employment years.  ECF No. 131 at ¶9.  It does not advance an objection grounded in the language of Plaintiff's contract, nor does it establish payment of record in response to Plaintiff's claim.  ECF No. 130 at 36-37.  Plaintiff's evidence reflects representation by Defendant's solicitor that Defendant's annual retirement contribution for his 2017-18 year of employment would not be made.  And Plaintiff's Brief in Opposition asserts this claim of non-payment only for the 2017-18 employment year.  ECF No. 141 at 54.

Plaintiff's annual salary was increased by 3.5% effective July 1st of each contract year, and for the 2017-18 contract year that amount was $161,647.20.  Defendant's Earnings History Account Breakdown identifies 26 checks issued in the amount of $6,217.20 (the biweekly salary equaling Plaintiff's annual salary) to Plaintiff between July 7, 2017 and June 22, 2018. ECF No. 131 at ¶¶ 8-12; *id.* at Ex. E.  Defendant's Breakdown also reflects a payment on July 6, 2018 of $643.48, assertedly in payment – at the 2018-19 adjust salary rate of $167,304.99 – of Plaintiff's one day of work on July 2, 2018.  This document does not itself, however, specify the pay period for which these amounts were disbursed.  Plaintiff's documentary evidence includes a different employment record, also apparently generated by Defendant, which appears to evidence pay periods for these disbursals which would support his allegation that

Defendant did not pay its employees in advance and therefore he was not paid for all subsequent work.  ECF No. 141 at 53; ECF No. 142 at ¶267.

In sum, the record reflects questions of material fact as to Defendant's breach of contract as well.

## V.  CONCLUSION

After construing the facts and drawing all reasonable inferences in the light most favorable to the nonmoving party, and undertaking a thorough review of the parties' legal analysis, the Court concludes that the record reflects myriad issues of material fact and is sufficient to maintain Plaintiff's claims as to Counts I, III and IV.   It further concludes that on the present record Count II raises a close Constitutional question inappropriate for decision on summary judgment.

By the Court:

Lisa Pupo Lenihan
United States Magistrate Judge

cc:  Counsel of
      record