## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL R. CASTAGNA, | ) | |
| | ) | Civil Action No. 2:18-cv-00894 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | ECF No. 323 |
| WEST MIFFLIN AREA SCHOOL | ) | |
| DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

I.    **PENDING MOTION**

In the present Motion for Judgment as a Matter Law, ECF No. 323, filed pursuant to Fed. R. Civ. P. 50(b), Defendant West Mifflin Area School District advances the following arguments:

Defendant asserts, as to protected speech, that Plaintiff's (a) lawsuit against School Board Member, Erin O'Leary White ("White"), (b) formal complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that State Representative William Kortz ("Kortz") was harassing him for political reasons, and (c) threat of litigation for asserted rights violations against Defendant through legal counsel - were each mere private employment disputes, and hence not protected under the First

Amendment.  It also asserts that Plaintiff's reports of financial improprieties and thefts did not relate to "wrongdoing" under Pennsylvania's Whistleblower Law ("PWL"), 43 P.S. §1423, because they were not couched in terms of violations of particular statutes, regulations or code.  As to causation, Defendant argues that Plaintiff's speech, political activity and whistleblowing did not cause his suspension or discharge because there was insufficient temporal proximity and no pattern of antagonism.  It also argues that Plaintiff was required to show that a majority of the School Board harbored or ratified a retaliatory animus.

## II.    STANDARD OF REVIEW/LEGAL STANDARD

Entry of judgment as a matter of law is a narrow inquiry, sparingly invoked, and "granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 545 n. 8 (3d Cir. 2007) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993)); *see also Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007), as amended (Aug. 28, 2007). *See also* ECF No. 324 at 5 (citing *Moore v. Susquehanna Area Regional Airport Authority*, 2005 U.S. Dist. LEXIS 45023, *7 (M.D. Pa. Sept. 30, 2005) ("The Court is [to ask] whether there is evidence upon which the jury could properly find a verdict for the prevailing party.")

## III.    ANALYSIS

### A.  <u>Protected Speech</u>

#### 1. First Amendment

First, Defendant asserts that Plaintiff's lawsuit against White, EEOC Complaint regarding Kortz, and threat of litigation against Defendant were private employment disputes, and not speech protected by the First Amendment.  The Court, however, instructed the jury that each of those instances constituted speech protected by the First Amendment.[1] It did so because none of these activities were an ordinary part of/within the scope of Plaintiff's job duties, each concerned alleged official wrongdoing (*i.e.*, were of matters of public concern and not purely personal interest), and each clearly constituted speech protected from retaliation by the First Amendment under the governing case law.[2]  *See generally Falco v. Zimmer*, 767 Fed.Appx. 288, 300-03 (3d Cir. 2019) (discussing private/public elements of protected speech); *id.* (holding that activity involves matters of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to

---

[1] *Cf.* ECF No. 324 at 6 (maintaining that "the jury should not have been charged that Plaintiff's speech was protected by the First Amendment and permitted to find in Plaintiff's favor on that claim").

[2] As reflected in  the jury's instructions, Plaintiff more specifically alleged that Defendant retaliated against him for (a) filing a lawsuit against White in 2016 regarding her alleged leaking of confidential information to outside third parties; (b) filing an EEOC complaint alleging that Kortz was harassing him for political affiliation reasons; and (c) hiring a lawyer who, on various dates during the first six months of 2018, advised Defendant's counsel of an intent to file a lawsuit for rights violations.

the public"); *Connick v. Myers*, 461 U.S. 138, 147–48 (1983) (forming two-step inquiry as

(1) identification of the statement as implicating a matter of public concern, and (2)

review of the statement's "content, form and context") (*i.e.*, a situational evaluation); *id.*

at 147 ("Because of the nature of their employment, speech by public employees is

deemed to be speech about public concern when it relates to their employment so long

as it is not speech 'upon matters of only personal interest'"); *Snyder v. Phelps*, 562 U.S.

443-453 (2011).  *Cf.* Plaintiff's Trial Brief Regarding Plaintiff's First Amendment

Protected Free Speech, ECF No. 274.  Plaintiff's testimony and the trial evidence was

that the White litigation was commenced to stem the leaking of confidential information

which had been a long-standing concern to which Defendants were unresponsive.  The

EEOC complaint lodged by Plaintiff challenged State Representative Kortz's

harassment related to his interference with Plaintiff's public school district employment

in retaliation for his political affiliation, a matter which Plaintiff argued, and the Court

agreed, should be one of public concern. Finally, counsel's threat of litigation had a

testified to and specific basis in Defendant's retaliation for Plaintiff's exercise of his

Constitutionally protected rights). *See generally*, Plaintiff's Brief in Opposition, ECF No.

333 at 3-8 (providing relevant case citations).  The evidence presented sufficiently

situated public-interest concerns that, in each instance, were "more than a multi-faceted

personal gripe", were not related to solely personal interest, and were more than a

"personal dispute" between individuals.  *Cf.* ECF No. 324 at 8-9.

## 2. Pennsylvania Whistleblower Law

Defendant also argues that Plaintiff's reports of financial improprieties and thefts did not and could not relate to "wrongdoing" under Pennsylvania's Whistleblower Law (the "PLW") because they were not couched in terms of (sufficiently particular) violations of (sufficiently particular) statutes, regulations or codes.  ECF No. 324 at 12-15.  As noted below, reports of wrongdoing are protected under the PWL if the wrongdoing is a violation of a code of conduct or ethics by school officials.  The reported instances of theft and fraud (and perhaps also the reported disclosure of confidential information) were reasonably well within the definition of "wrongdoing" under the PLW (and it is probable that the alleged/evidenced circumstances of reported instances of theft constituted "waste" as well).  Plaintiff's reports were not factually "vague", nor was the asserted wrongfulness of the conduct vague, ambiguous or "subjective", nor did the reports want for specificity.[3]  To the contrary they sufficiently evidence instances of good faith reporting.  *Cf.* ECF No. 324 at 13-14.

As reflected in the  jury instructions on this issue, the applicable law prohibits an employer from terminating an employee for reporting (orally or in writing), in good faith, wrongdoing or waste to the employer or an appropriate authority. *See* 43 P.S. §1423(a).  "Wrongdoing" is defined as: A violation (beyond the technical or minimal), of

---

[3] Plaintiff evidenced reports to Defendant of employee theft of sporting equipment and cafeteria items, obtaining personal profit by charging student athlete families to use Defendant's facilities, and other misconduct such as failure to reimburse tuition payments, as well as White's disclosure of confidential information.

any political subdivision ordinance or regulation *or* of a code of conduct or ethics

designed to protect the interest of the public or the employer.  *See, e.g.*, *Bielewicz v. Penn-*

*Trafford Sch. Dist.*, 2011 WL 1486017 at \*5 (W.D. Pa. 2011), report and recommendation

adopted, No. CIV.A. 10-1176, 2011 WL 1399839 (W.D. Pa. Apr. 13, 2011).   And "Waste"

is defined as:  An employer's conduct or omission that results in substantial abuse,

misuse, destruction or loss of funds or resources belonging to or derived from the

Commonwealth or political subdivision (here, the School District). *See also* ECF No. 333

at 8-9.  *Cf.* ECF No. 164 at 24 (noting that "the referent of 'substantial' is the accused's

conduct rather than the amount of loss").

### B. <u>Causation</u>

#### 1.  Temporality, Proximity, Evidence as a Whole

Defendant argues that Plaintiff's speech, political activity and whistleblowing

did not cause his suspension or discharge because there was insufficient temporal

proximity and no pattern of antagonism.[4]  ECF No. 324 at 15-18.  However, the record

(particularly as appropriately read, *i.e.*, in the light most favorable to the verdict winner)

amply evidences, *e.g.*, that School Board Members David Marshall, White and Nicholas

---

[4] As also reflected in the jury instructions: One way to find a causal connection is by unusually close timing between Plaintiff's protected activity and Defendant's decision to suspend and/or terminate. A second way to find a causal connection is by the existence of a pattern of antagonism coupled with timing that connects Plaintiff's protected activity and Defendant's decision to suspend and/or terminate. A third way to find a causal connection is by inference after reviewing the evidence as a whole. *See also* ECF No. 333 at 9-10 (citing *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004)); *id.* at 11, 15 (providing additional relevant case citations specific to each way to establish causation); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997).

Alexandroff repeatedly expressed antagonism toward Plaintiff, and that they moved against Plaintiff (beginning with suspension) at the first opportunity following their December 2017 seating to their elected Board positions and Marshall's election to the Board Presidency. *See* Plaintiff's Brief in Opposition, ECF No. 333 at 12-14. *See also generally, id.* at 10-16 (canvassing trial evidence demonstrating compelling basis for reasonable jury to find causation under each of three alternatives). *Cf.* Memorandum Opinion on Defendant's Motion for Summary Judgment, ECF No. 164 at 14 (citing ECF No. 141 at 7-9).[5]

### 2. Sufficiency of Evidence of Retaliatory Animus

Defendant also argues that Plaintiff was required to show that a majority of the Board harbored or ratified a retaliatory animus. ECF No. 324 at 19-20. Defendant misconstrues the caselaw.

First, *Azzaro v. County of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997) held that a plaintiff could recover for First Amendment retaliation despite the absence of evidence that board members knew of the protected activity, where the board rubber-stamped a mis-motivated proposal brought by others.[6] Defendant erroneously asserts that *Azzaro*

---

[5] *Id.* ("Moreover, the evidence includes that of ongoing animosity toward Plaintiff on the part of allegedly allied Board members between the November 2016 State election and at least the end of 2017); ECF No. 130 at 18 (quoting *Flanders v. Dzugan*, 156 F.Supp.3d 648, 673 (W.D. Pa. 2016) ("To establish causation under an antagonism theory, a plaintiff must show actual antagonistic conduct or animus in the intervening period between the protected activity and the retaliation.")).

[6] *See also Bartholomew v. Fischl*, 782 F.2d 1148, 1153 (3d Cir. 1986); *Suppan v. Dadonna*, 203 F.3d 228, 237–38 (3d Cir. 2000) (where retaliatory evaluations by the plaintiff's superiors resulted in tainted promotion lists which in turn resulted in the decision-maker (the Mayor) declining to make any promotions, the court held that the lack of "evidence of any retaliatory animus underlying the Mayor's decision not to make any

"does not evaluate municipal liability in the context of a claim filed pursuant to §1983".
To the contrary, the *Azzaro* court upheld a § 1983 claim based upon the same
considerations it reviewed at greater length in the context of Title VII.  *Cf. Zappan v.
Pennsylvania Bd. of Prob. & Parole*, 152 F. App'x 211, 217 (3d Cir. 2005) (parenthetically
describing *Azzaro* as holding the "same facts and considerations relevant in evaluating
causation under Title VII and Section 1983").

Second, Defendant contends that the "cat's paw" theory of liability which
(according to Defendant) characterizes *Azzaro*'s analysis, is unavailable in a § 1983
claims against a municipality.  Defendant relies upon (and mis-quotes) a Seventh
Circuit case, *Waters v. City of Chicago*, 580 F.3d 575, 586 (7th Cir. 2009), which did not
decide but merely questioned (in a footnote response to a "passing reference") whether
such a theory is applicable to § 1983 municipal liability.  *See* ECF No. 335 at 3-5.
Subsequently, the Seventh Circuit surveyed the caselaw and concluded that "the
substantial weight of authority shows that a cat's paw theory will support entity
liability for retaliation under . . . § 1983, except perhaps when the defendant is a
municipal corporation and the biased or retaliatory subordinate is not a policy-maker."
*Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012), overruled on other grounds by *Ortiz v.
Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).

---

promotions" did not "break the causal connection between plaintiffs' protected conduct and the
defendants' failure to promote them").

*Cf.* ECF No. 333 at 17 (noting trial record evidence that (a) Board member and newly-elected President,
Marshall, demonstrated extreme animus and (b) at least three members were closely aligned and
expressed retaliatory intent).

Third, the cases Defendant relies upon for the proposition that "a decision-making body cannot be liable when less than a majority of its members act with an impermissible purpose" are patently distinguishable.  More specifically, in *LaVerdure v. Cnty. of Montgomery*, 324 F.2d 123, 125 (3d Cir. 2003), the plaintiff did not challenge the Board of Commissioners' vote to terminate her.  Instead, the adverse action at issue was a subsequent public rebuke by a single commissioner.  The court held that absent delegated authority or ratification, the act of a single commissioner could not bind the county; the presence or absence of an impermissible purpose was not material, and was not mentioned in the court's opinion.  And in *Watson v. Borough of Susquehanna,* 532 Fed. Appx. 233, 234 (3d Cir. 2013), the jury found that, of six Council members who voted to terminate the plaintiff, only one acted for an impermissible purpose; and the court found "no evidence that he influenced other Council members".[7]

Fourth, although Defendant contends that its position necessarily follows from the Supreme Court's rejection of *respondeat superior* liability under § 1983 in *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978) and *St. Louis v. Proprotnik*, 485 U.S. 112 (1988), the Third Circuit has explicitly rejected that contention:

> Rutgers next argues that San Filippo is inappropriately seeking to impute to the members of the Board of Governors the improper motives of those responsible for bringing charges against him.  Rutgers contends that, under [*Monell*] and [*Praprotnik*], the University can only be held liable if the Board members personally determined to dismiss San Filippo on the basis of his first amendment activities or knowingly acquiesced in the

---

[7] In the present case, in contrast, there is evidence that at least three of the six Board members who voted for termination harbored an impermissible retaliatory animus, which is plainly sufficient to "play[ ] some substantial role in the relevant decision." *Watson,* 532 Fed. Appx.  234 (quoting *Suppan*).

decision to do so by approving both the decision and the allegedly improper basis for it. But . . . in San Filippo's view, the University should be held liable if the fact-finder concludes that (a) the charges against San Filippo were initiated in retaliation for the exercise of his first amendment rights and (b) the Board members were "deliberately indifferent" to that fact.

. . . .

[T]he deliberate indifference standard . . . is most consistent with the "admonition in *Monell* that a municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation." (citations omitted). Nor is this use of the deliberate indifference standard inconsistent with . . . *Praprotnik* [, which] recognized that final decision-making power may be delegated, and that a local governing body may be held liable based upon the exercise of this delegated power.

*San Filippo v. Bongiovanni*, 30 F.3d 424, 444-45 (3d Cir. 1994), abrogated on other grounds by *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011).

Fifth, Defendant contends that "[e]ach instance of protected activity must be viewed separately, and Plaintiff must establish that the District took action against him *because of* a particular activity"; and that "the alleged retaliatory intent must relate to the same conduct at issue in each of Plaintiff's claims." In support, Defendant relies upon *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742 (3d Cir. 2019), which held that free speech and pure union association claims must be analyzed separately (because the "public concern" element is automatically satisfied in the latter claim). But *Baloga* does not purport to require separate analysis of causation with respect to different types or instances of protected conduct, and indeed the Third Circuit has expressed a contrary view. *See Bongiovanni*, 30 F.3d at 444 (where a plaintiff repeatedly engages in protected

activity, "a fact-finder may reasonably infer that it was the aggregate of the protected

activities that led to retaliatory dismissal").[8]

## IV.   CONCLUSION

For these reasons, Defendant's Motion for Judgment as a Matter of Law, ECF No.

323, will be denied.[9] An appropriate Order will follow.


Dated:  November 8, 2022                                    By the Court:


                                                            Lisa Pupo Lenihan
                                                            United States Magistrate Judge


---

[8] The point is significant because Defendant concedes that "[a]t best, Plaintiff established that one Board member retaliated against him because of his political affiliation, and one Board member retaliated against him because of his speech."  ECF No. 324 at 22.  Even under Defendant's misguided statements of the law, reversal of those two retaliatory votes would be enough to reverse the outcome (*i.e.*, to convert the six-three Board vote in favor of adverse action to four-five against).

*Cf.* ECF No. 164 at 12-13 ("The Court also rejects Defendant's attempts to advance an argument that Plaintiff is required to establish that each of the other five (5) Board members voting in favor of his termination were aware of Marshall's improper motivation (ECF No. 130 at 16) and that each of them voted in favor of termination with a substantial or motivating factor being Plaintiff's protected conduct (*id*. at 31). Indeed, not even Defendant appears committed to this assertion. Compare *id*. at 30 ("Plaintiff must show that two (2) or more Board members retaliated against him on the basis of his political affiliation or his speech.")).

[9] Defendant has also filed, in the alternative, a Motion for New Trial pursuant to Fed. R. Civ. P. 59(b), ECF No. 325. *See* ECF No. 324 at 1 n. 1.  The Court has taken the additional issues raised therein under advisement and will address them in due course.